**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FERDINANDO MUOIO,
     Plaintiff,

     v.

COSTCO WHOLESALE CORP.,
     Defendant.

No. 3:13-cv-44 (SRU)

## RULING AND ORDER

## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ferdinando Muoio filed suit in Connecticut Superior Court alleging that his former employer, Costco Wholesale Corporation ("Costco"), engaged in prima facie discrimination on the basis of age and disability under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60, *et seq.* [Counts 1–4]; that Costco deprived him of his rights/privileges under the state constitution's anti-discrimination provisions [Count 5]; that Costco retaliated against him for filing a request for workers' compensation [Count 6]; wrongful discharge [Count 7]; and wrongful termination and breach of the implied covenant of good faith and fair dealing [Count 8].  Notice of Removal, Ex. 1 (doc. 1-2).  Muoio sought back pay and front pay, any "lost bonuses," lost wages, lost benefits (such as health insurance and retirement), reinstatement to his position at Costco with promotion, an injunction removing all adverse information from his personnel file, and attorneys' fees and costs.  Am. Compl. 16 (doc. 20).  Costco removed the action to the district court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.  *Id.*  Muoio subsequently amended his complaint by stipulation.  Rep. of 26(f) Conf. 5 (§ 2D.1) (doc. 12).

Costco moves for summary judgment, arguing that under the *McDonnell Douglas* burden-shifting framework, Muoio has failed to overcome the presumption that Costco terminated his employment for legitimate, non-discriminatory reasons with respect to his employment discrimination claims and his claim regarding workers' compensation retaliation. Muoio concedes summary judgment on Counts 5 (deprivation of rights), 7 (wrongful discharge) and wrongful termination (Count 8).  Pl.'s Opp'n Br. 1 (doc. 36).  He argues that genuine issues of material fact exist with respect to Counts 1 through 4 (anti-discrimination charges) and Count 6 (retaliation for exercising workers' compensation rights).

Based on the record before me, the pleadings, and arguments raised at the motion hearing on this matter, Costco's motion for summary judgment is GRANTED.


I.      **Standard of Review**

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965 (1992) (court is required to "resolve all ambiguities and draw all

inferences in favor of the nonmoving party").  When a motion for summary judgment is properly

supported by documentary and testimonial evidence, however, the nonmoving party may not rest

upon the mere allegations or denials of his pleadings, but must present sufficient probative

evidence to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is

summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also*

*Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving

party submits evidence that is "merely colorable," or is not "significantly probative," summary

judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine
> issue of material fact.  As to materiality, the substantive law will
> identify which facts are material.  Only disputes over facts that
> might affect the outcome of the suit under the governing law will
> properly preclude the entry of summary judgment.    Factual
> disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48.  To present a "genuine" issue of material fact, there must be contradictory

evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at

248.

If the nonmoving party has failed to make a sufficient showing on an essential element of

his case with respect to which he has the burden of proof at trial, then summary judgment is

appropriate.  *Celotex*, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to

any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322-23; *accord*

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's

burden satisfied if he can point to an absence of evidence to support an essential element of

nonmoving party's claim).  In short, if there is no genuine issue of material fact, summary

judgment may enter.  *Celotex*, 477 U.S. at 323.


## II.   Facts

Ferdinando Muoio is a white male, born on January 5, 1946.  Am. Comp. ¶¶ 9–10;

Def.'s Local R. 56(a)1 Statement ¶ 9 (doc. 29-1).  He began working at the Costco warehouse in

Milford, Connecticut in 1999 at the age of 54, and after two years, he was employed as a baker at

a salary of approximately $54,000 per year, plus benefits and retirement.  *Id.* ¶ 7; Am. Compl. ¶¶

10–12.  Muoio works with two other bakers, both over the age of sixty. Local R. 56(a)1

Statement ¶ 25.  Around December 10, 2011, Muoio injured himself while working.  Local R.

56(a)1 Statement ¶¶ 15–16.

### A.  Costco's Managerial Hierarchy With Respect to Muoio

Muoio was employed in Costco's Bakery Department, where Karna Browning served as

a department supervisor, and Barry Testa served as department manager.  *Id.*  ¶¶ 6, 26.  Assistant

General Manager Rich Lynch oversaw Testa and the Bakery Department, and Lynch reported to

General (store) Manager was Joe LaCerva.  *Id.* ¶¶ 3, 5–6.  Paul Pulver, Costco's Regional Vice

President, served as La Cerva's manager, and Costco's East Coast Operations managers, Senior

Vice President Jeff Long and Executive Vice President Joe Portera, supervised Pulver.  *Id.* ¶ 4.

Costco's employment policy required that a manager at the Executive Vice President

level, or higher, review the circumstances giving rise to a disciplinary action that could result in

termination for employees with five or more years' employment at Costco.  Def.'s Mot. Sum. J.,

Ex. B2, at Bates No. 447.  In Muoio's case, his local managers did not participate in or make the

decision to terminate him.  *Id.* ¶ 86.  Pulver, Long, and Portera participated in the discussion of and ultimate decision to terminate Muoio.  *Id.* ¶ 83.

B.  Muoio's Injury

In December 2011, Muoio slipped and fell while working, resulting in a compression fracture to his thoracic spine (at T6).  Local R. 56(a)1 Statement ¶¶ 15–16.  Noting that he felt a tweaking sensation in his back, Muoio reported the injury to his on-site supervisor, Karna Browning, who instructed him to report his injury to the Bakery Manager, Barry Testa.  Muoio Depo. Tr. 96:7–97:23 (Nov. 26, 2013); Def.'s Mot. Sum. J., Ex. N.  As the pain grew progressively worse, Muoio requested medical leave and visited a doctor.  Muoio Depo. Tr. 116:11–117:9.  On December 20 and December 30, 2011, Muoio's treating physician declared him totally disabled until his next visit, and Muoio filed an application for workers' compensation.  *Id.* 132:16–132:23; Local R. 56(a)1 Statement ¶ 11; Pl's Opp'n to Mot. Sum. J., Ex. 12; Def.'s Mot. Sum. J., Ex. O.  On January 16, 2012, Muoio visited his physician, who declared that Muoio was fit for "light-duty" work in which he worked no more than four (4) hours a day and lifted no more than fifteen (15) pounds beginning on February 6, 2012.  Muoio Depo. Tr. 133:20–134:8; Pl.'s Opp'n to Mot. Sum. J., Ex. 16; Def.'s Mot. Sum. J., Ex. P.

The parties' recollections then diverge.  Muoio alleged that he was told by store general manager Joe LaCerva that there were no jobs available in any Costco department that conformed to Muoio's light-duty restriction, and he alleged that LaCerva did not notify Muoio of potential light-duty assignments in other departments.  *Id.* 44:14–45:20, 134:9–134:18.  Muoio also alleged that LaCerva told him that if he were able to obtain clearance for lifting twenty-five (25) pounds or more, LaCerva would be able to re-assign Muoio to light-duty in the bakery.  *Id.* 44:14–45:20.  LaCerva, meanwhile, testified that in accordance with Costco's accommodation

policy, he offered Muoio accommodation for his injury by offering to place Muoio temporarily in a light-duty job in other departments until he received medical clearance to lift more than fifteen (15) pounds.  LaCerva Depo. Tr. 15:9–16:23 (Jan. 16, 2014); *see also* Def.'s Mot. Sum. J., Ex. B1, at Bates Nos. 434–35 (2010 Employee Agreement: Policy on Accommodation for Injured Employees).  LaCerva implied that Muoio did not avail himself of those opportunities. LaCerva Depo. Tr. 14:14–14:22.  Muoio ultimately returned to his job with a limit of working no more than four hours per day and lifting no more than twenty-five (25) pounds beginning on February 6, 2012, the first day upon which his physician authorized Muoio to work after his injury.  Pl's Opp'n to Mot. Sum. J., Ex. 13; Def.'s Mot. Sum. J., Ex. Q.  By June 4, 2012, Muoio's physician had cleared Muoio to return to full-duty employment, and Muoio recommended full-time employment in the bakery with no restrictions.  Muoio Depo. Tr. 149:24–150:5; Local R. 56(a)1 Statement ¶ 70.  Upon his return in June 2012, Muoio served as temporary department supervisor while Browning, the Bakery Supervisor, took medical leave. Local R. 56(a)1 Statement ¶ 69.

   C.  Muoio's Disciplinary History

       Prior to Muoio's injury, several Costco employees and managers had made complaints against him.  In 2001, Costco reprimanded Muoio for insubordination.  Def.'s Mot. Sum. J., Ex. J, at 1.  In 2005, he was reprimanded for inappropriate conduct toward female coworkers, specifically "inappropriate touching and hugging, making suggestive remarks and addressing [female coworkers] by names other than their own."  Local R. 56(a)1 Statement ¶ 36; Def.'s Mot. Sum. J., Ex. L, at 1.  In 2009, Costco found that Muoio had violated its anti-harassment policy, Local Rule 56(a)1 Statement ¶¶ 29–34, 36, and had engaged in "unbecoming conduct" that compromised employee safety.  *Id.* ¶ 37; Def.'s Mot. Sum. J., Ex. L, at 2.  Through an

investigation by its Human Resources division, Costco found that, although Muoio bore no ill

will or malicious intent when harassing his coworkers in 2009, he had violated Costco's anti-

harassment policies.[1]   Local R. 56(a)1 Statement ¶ 34; Def.'s Mot. Sum. J., Ex. K, at 1.  Despite

a recommendation from Human Resources that Muoio be suspended without pay, Muoio's

General Manager at the time, Jeff Dawson, and Regional Vice President Paul Pulver waived that

suspension and notified Muoio that any future violations of the anti-harassment and employee

safety (unbecoming conduct) policies could result in immediate termination.  Def.'s Mot. Sum.

J., Ex. L ("Paul Pulver and I agreed to waive the suspension, as discussed. Future violations or

related violations will result in termination.").  Costco additionally issued "employee counseling

notices" (i.e., face-to-face reprimands, or "counseling" with a manager) regarding the

unbecoming and inappropriate conduct allegations.  Local R. 56(a)1 Statement ¶¶ 36–41.

   Upon Muoio's return to full-time employment in June 2012, his coworkers made several

complaints on matters similar to the 2009 complaints.  In July 2012, after investigating a

complaint alleging that Muoio had pushed several baking racks toward a female employee,

threatening her safety, Costco found that Muoio had again violated its "unbecoming conduct"

policy.  Def.'s Mot. Sum. J., Ex. M.  Noting that Muoio had been reprimanded for the same

conduct in 2009, Costco managers noted, "This is [Muoio]'s second counseling notice for this

same behavior.  Any future violations related to this counseling notice will be cause for

termination."  Def.'s Mot. Sum. J., Exs. L & M.

   In August 2012, coworker Allysia ("Ally") Jimenez filed a written, internal complaint

---

1.   One of the 2009 harassment allegations related to ridiculing, harassing, or otherwise intimidating an employee
with Tourette's syndrome.  Muoio argued that because he had no understanding of Tourette's syndrome, his alleged
harassment cannot be found to violate Costco's anti-harassment policy.  Pl.'s Local R. 56(a)2 Statement ¶¶ 30–31
(doc. 36-1).  Costco's anti-harassment policy does not require malice or knowledge of a person's specific medical
condition to find a violation of its policy; its policy provides, "All employees are expected to be sensitive to and
respectful of their co-workers," and it prohibits "all forms of harassment based upon any protected status," including
disability.  Def.'s Mot. Sum. J., Ex. B1, at Bates No. 434.

against Muoio alleging he had violated Costco's anti-harassment policy.[2]  Pl.'s Opp'n to Mot.

Sum. J. Ex. 8, at 1; Def.'s Mot. Sum. J., Ex. B2; Local R. 56(a)1 Statement ¶¶ 74–79.  Jimenez's

allegations included the following:

> He then made a comment about my football jersey saying 'are you
> going to get on top or am I' 'are we going to play tackle' Right
> away I felt uncomfortable but didn't know what to say, not only
> did he do this, but he proceeds putting his hands on me and
> touching me in a sexual manner.  This is not the first time this has
> happened.  Every time I see him . . . he usually makes a sexual
> comment or joke then proceeds to touch me, weither [sic] it be my
> arm, or grabbing my waist.  This time he ran his hands up to my
> sholder [sic] under my shirt.

Pl.'s Opp'n to Mot. Sum. J., Ex. 8, at 1.  Both Muoio and Jimenez agreed that Muoio had made

the "tackle" comment, although they disagreed about the exact phrasing and tone of his

comment, and both employees noted that Muoio had touched Jimenez's arm.[3]  Pl.'s Opp'n to

Mot. Sum. J., Ex. 10, Ex. 17.  Both LaCerva and Assistant General Manager Jim Majer[4]

reviewed the complaint, interviewed Muoio and Jimenez, reviewed video surveillance of the

incident, and submitted their findings to their regional manager.  *Id.*; Def.'s Mot. Sum. J., Ex. V.

Costco found that video surveillance substantiated Jimenez's claim that Muoio had

inappropriately touched her against her will and in violation of the company's anti-harassment

---

2.   Costco's "sexual harassment" and "anti-harassment" policies are more expansive than federal and state law.
Def.'s Mot. Sum. J., Ex. B1 (2010 Employee Agreement), at Bates Nos. 434–35 (including in its definition of sexual
harassment, "inappropriate or unwelcome touching" and "suggestive comments" and noting "This [sexual
harassment] policy is intended to assist Costco in addressing not only illegal harassment, but also any conduct that is
offensive or otherwise inappropriate in our work environment."); Local R. 56(a)1 Statement ¶¶ 10–15.  That policy
goes on to state, "Anyone who is found to have violated our anti-harassment policy is subject to corrective action up
to and including immediate termination of employment, regardless of whether the violation amounts to a violation of
law" and that "[Costco] will take whatever action [it] deem[s] necessary to ensure the inappropriate behavior stops."
Def.'s Mot. Sum. J., Ex. B1, at Bates No. 436.  Muoio received training on Costco's policy in 1999 and 2008.
Def.'s Mot. Sum. J., Ex. G, at 5; *Id.*, Ex. H.

3.   Muoio argues that sexual harassment liability does not extend to unwanted touching of a person's body; he
asserts that such contact is only inappropriate if a person touches the complainant's sex organs.  Muoio Depo. Tr.
185:9–185:12 ("I says 'Joe, first of all, I didn't touch her in any part of her body that I wasn't supposed to touch, her
private parts'").

4.   According to the parties' descriptions of Costco's supervisorial hierarchy, Majer did not supervise Muoio.

policy.  Pl.'s Opp'n to Mot. Sum. J., Ex. 10.

At the same time that Costco managers were reviewing the Jimenez complaint, store managers received complaints that Muoio was misappropriating or stealing supplies (towels) from the bakery.  Local R. 56(a)1 Statement ¶¶ 71–73; Def.'s Mot. Sum. J., Ex. U (Muoio "needs to understand that this is a terminable violation.").  A review of video surveillance footage substantiated allegations that Muoio had taken towels home with him from time to time, in violation of Costco's loss-prevention and theft policies.  Def.'s Mot. Sum. J., Ex. U; *Id.*; Ex. B1 (2010 Employee Agreement), at Bates Nos. 488–89 (list of activities warranting immediate termination).  Muoio argued that he had no intent to deprive Costco of its property, that he returned the towels, and that the allegation was pretextual.  Pl.'s Opp'n to Mot. Sum. J. Br. 26 & Ex. 23, at 2.

Due to Costco's policies regarding seniority, local managers did not have the authority to terminate Muoio.  Def.'s Mot. Sum. J., Ex. B2, at Bates No. 447.  Instead, Muoio's local managers referred his personnel file to upper management after Jimenez's sexual harassment complaint and the anonymous theft complaint.  Local R. 56(a)1 Statement ¶¶ 79–83; LaCerva Depo. Tr. 55:3–55:16.  Pursuant to Costco's policies, LaCerva and Majer conducted an investigation into Jimenez's complaint and forwarded their "findings" to upper management. LaCerva Depo. Tr. 55:3–55:16; Pl.'s Opp'n to Mot. Sum. J., Ex. 10.  There is no indication in the record that LaCerva or Majer made a recommendation to those managers regarding Muoio's discipline.  Ultimately, East Coast Operations Manager Joe Portera terminated Muoio, and LaCerva was directed to notify Muoio of his termination.  Def.'s Mot. Sum. J. Br. 7; Local R. 56(a)1 Statement ¶¶ 83, 92.

After his termination, Muoio timely filed a complaint with the U.S. Equal Employment

Opportunity Commission and then filed this lawsuit in state court, alleging that he was terminated on the basis of his age and disability, and in retaliation for filing a workers' compensation claim. Muoio alleged that the termination was not based on his disciplinary history, and he further argued that the summer 2012 complaints were pretextual.

D. <u>The Allegedly Discriminatory Conduct</u>

In support of his argument alleging that Costco utilized his coworkers' complaints against him as a pretext to mask unlawful and discriminatory animus, Muoio identified four incidents of alleged bias. Muoio alleged that, after he returned to full-duty employment in June 2012, his direct supervisor, Testa, made pejorative comments regarding Muoio's age, twice, and asked Muoio when he intended to retire.[5] *Id.* 37:22–38:21, 41:18–42:8, 43:15–44:8. Muoio also noted that in September 2012, after being notified that an investigation had been opened regarding Jimenez's sexual harassment complaint, and after asking for LaCerva's assistance in defending against the complaint, LaCerva asked Muoio if Muoio had considered retiring. *Id.* 196:1–196:23, 197:1–197:18, 203:18–204:2. Muoio alleged that those comments give rise to an inference of discrimination on the basis of age and disability and formed the basis for, or served as a contributing factor to, his termination on September 28, 2012. Muoio also alleged that because LaCerva played a role in investigating Jimenez's complaint, he was involved in the ultimate adverse employment action.[6]

Costco argued that it terminated Muoio for non-discriminatory reasons—specifically, based on his disciplinary history and the complaints made against him in summer 2012. Def.'s

---

5. When Testa allegedly asked Muoio about his retirement plans, another baker of similar age had just announced his retirement. Def.'s Mot. Sum. J., Ex. E, Bruce Sabin Depo. Tr. 13:13–13:22 (Jan. 21, 2014). Muoio's testimony indicates that he believed Testa's comment was a response to Muoio's ongoing, post-injury pain. Muoio Depo. Tr. 32:2–32:22 ("I am still getting pains. . . between my shoulder blades. . . . His exact words were 'You put in your time, why don't you retire.'").

6. The parties agree that Testa was not involved in the sexual harassment investigation and did not play any role in Costco's decision to terminate Muoio. Def.'s Ex. F, Barry Testa Depo. Tr. 25:7–26:7 (Jan. 16, 2014).

Mot. Sum. J. 1; Pl.'s Opp'n to Mot. Sum. J., Ex. 11, at 1 (Termination Form); Local R. 56(a)1

Statement ¶ 84.  Costco relied heavily on the sexual harassment complaint, noting that Jimenez's

complaint was not the first sexual harassment complaint it had received regarding Muoio, that

harassment is immediate cause for termination, and that its Employee Agreements define sexual

harassment as including "vulgar or sexual comments, jokes, stories and innuendo," and

"inappropriate or unwelcome touching or staring."  Def.'s Mot. Sum. J., Ex. A1 (2007 Employee

Agreement), at Bates Nos. 348–49, 402; *Id.*, Ex. B1 (2010 Employee Agreement), at Bates Nos.

434–35, 487.

Muoio contested all disciplinary findings, including the 2012 complaints.  Pl.'s Local R.

56(a)2 ¶¶ 34, 36, 37, 41, 71–72, 75–76.  He did not allege that the complaints were inaccurate,

but rather, that those complaints were either motivated by discriminatory animus/malice or

misconstrued his intent.  Pl.'s Local R. 56(a)2 ¶ 31; Muoio Depo. Tr. 88:24–90:9, 154:14–

161:24, 163:18–164:11, 164:15–171:2, 171:14–171:25, 172:8–172:20, 175:2–175:24, 177:1–

177:14, 177:17–178:18, 180:10–182:1, 184:12–188:4, 191:18–193:18.

## III.  Discussion

This section discusses Muoio's remaining state and federal age discrimination, disability

discrimination, and workers' compensation claims in light of the record evidence, oral argument,

and the pleadings.  For the reasons that follow, Muoio has not sustained his evidentiary burden

on any of those claims.

### A.  Age Discrimination Claims

Muoio raised a claim alleging that Costco engaged in unlawful age discrimination under

federal and state employment discrimination laws.  Because Connecticut courts interpret the state

statute regarding unlawful age discrimination in employment in light of federal law, I analyze

both age discrimination claims under ADEA.[7]

> 1. *Statute of Limitations and Cognizable Harms*

Connecticut requires parties to submit a complaint to the Connecticut Commission on

Human Rights and Opportunities ("CHRO") or the U.S. Equal Employment Opportunity

Commission ("EEOC") within 180 days of the occurrence of an alleged violation.  Conn. Gen.

Stat. § 46a-82(f) ("Any complaint filed pursuant to this section must be filed within one hundred

and eighty days after the alleged act of discrimination").  The parties do not contest that Muoio

timely filed his administrative complaints.  Although Muoio did not receive release letters prior

to initiating his state court case, he received a right-to-sue letter shortly after his case was

removed to federal court.[8]

> 2. *Prima Facie Age Discrimination*

ADEA provides that it is illegal for an employer "to fail or refuse to hire or to discharge

any individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment because of such individual's age."  29 U.S.C. §

623(a)(1).  To establish a prima facie case of age discrimination, a complainant must prove (1)

he was within the protected age group; (2) he was qualified for the position; (3) he experienced

an adverse employment action; and (4) that that adverse action occurred under circumstances

---

7.   The Connecticut Supreme Court has held that, because the state's employment discrimination laws are modeled on federal law, state courts look to federal law for guidance on the interpretation of state law.  *Conn. v. Comm'n on Human Rights & Opportunities*, 211 Conn. 464, 469–70 (1989); *see also Aiello v. Stamford Hosp.*, No. 3:09-cv-1161, 2011 WL 3439459, at *27 (D. Conn. Aug. 8, 2011), *aff'd*, 487 F. App'x 677 (2d Cir. 2012) (summary order).

8.   The issuance of a "right-to-sue" letter is a waivable condition, not a jurisdictional requirement.  *See Francis v. N.Y.C.*, 235 F.3d 763, 768 (2d Cir. 2000) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.")); *Pietras v. Bd. of Fire Comm'rs*, 180 F.3d 468, 474 (2d Cir. 1999).  In this case, Muoio initiated his state claim, and his case was removed to federal court, prior to receiving his release and right-to-sue letters.  Muoio's EEOC release arrived within thirty (30) days of the removal of this case, rendering any procedural bar on that basis moot.

giving rise to an inference of discrimination. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). Once a plaintiff has established a prima facie case for age discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000) (applying *McDonnell Douglas* to ADEA claims); *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If an employer is able to articulate such a reason, the plaintiff must offer evidence that the employer's stated reason for its actions is a pretext for actual discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–10 (1993).

Where, as here, discovery has concluded, the plaintiff has the burden of proving his prima facie case by a preponderance of the evidence, and the employer will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 510–11; *Tx. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981); *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (citing *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1336 (2d Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998)). Unlike Title VII, ADEA requires the plaintiff to prove that age was the "but-for" cause of the challenged employer decision for that plaintiff to prevail. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–77 (2009) (holding that the "mixed motives" framework of Title VII cannot be applied to ADEA given the differing statutory construction of the two regimes). The plaintiff has not met his burden by demonstrating that age was a "substantial" or "motivating" factor in the employer's decision. *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 113 S. Ct. 2517, 2525–26 (2013). "But-for" causation does not require proof that age was the only cause, but rather, that "the adverse action would not have occurred in the absence of [that] motive."

13

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

The parties agree that Costco is subject to ADEA, that Muoio qualifies for protection under ADEA, that he was qualified for his position, and that he suffered an adverse employment action.  The parties disagree whether the manner in which Costco's managers reached their decision to terminate Muoio and whether their deliberative process gives rise to an inference of age discrimination.   Specifically, Muoio alleges that certain remarks by his department supervisor, Testa, and his store's general manager, LaCerva, demonstrate age-related animus that resulted in his termination.  Costco argues that it terminated Muoio on the basis of his disciplinary record, for violation of its sexual harassment policy, and for misappropriation of Costco's property.  Based the pleadings, oral argument, and all the evidence in the record to date, Muoio has not offered evidence to overcome the presumption that Costco terminated him for legitimate, non-discriminatory reasons.

     a.   Stray Remarks

Muoio testified that his local supervisors, Testa and LaCerva, made ageist comments from the time of his injury to the date of his termination.  When Muoio returned to full-duty employment after his December 2011 injury, he stated that he experienced pain radiating through his ribs and would sometimes put his hand to his rib cage.  Muoio Depo. Tr. 32:2–11.  Muoio testified that once, when Testa saw him holding his ribs, he told Muoio, "You put in your time, why don't you retire." *Id.* 32:15–34:16.  Shortly thereafter, when Muoio asked for help lifting a heavy item, Muoio alleged that Testa said, "Sure, I'll help an old man." *Id.* 38:10–14.  Muoio also alleged that Testa said, "Get out of my way, old man," when Testa pushed cooling racks with such force that those racks nearly hit Muoio. *Id.* 41:18–42:2.  Finally, Muoio alleged that after LaCerva notified Muoio that several significant complaints had been filed against him, and

14

after Muoio asked LaCerva to help him weather those complaints, LaCerva asked Muoio, "Well,

why don't you retire?"  *Id.* 196:1–23.  At no point prior to his termination did Muoio report those

comments or allege that he was subjected to adverse employment actions due to his age.

> In determining whether remarks are probative of discriminatory intent, a court considers

> > (1) who made the remark (i.e., a decision-maker, a supervisor, or a
> > low-level co-worker); (2) when the remark was made in relation to
> > the employment decision at issue; (3) the content of the remark
> > (i.e., whether a reasonable juror could view the remark as
> > discriminatory); and (4) the context in which the remark was made
> > (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).  Remarks made by someone

other than a decision-maker (with respect to the adverse employment action) "may have little

tendency to show that the decision-maker was motivated by the discriminatory sentiment

expressed in the remark."  *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007),

*abrogated on other grounds by Gross*, 557 U.S. at 177.  Remarks that are "remote and oblique"

to an adverse employment action are less probative of the employer's discriminatory motivation.

*Tomassi*, 478 F.3d at 115.

The record provides that Testa had no role in the investigation of Muoio's alleged

misconduct, much less in Muoio's discipline or termination.  Testa Depo. Tr. 25:16–26:7, 53:22–

53:24.  Muoio testified, and Costco confirmed, that although Testa had authority over matters

such as scheduling, he did not believe that Testa was involved in matters regarding employee

discipline.  Muoio Depo. Tr. 37:16–37:21, 193:19–193:22, 203:14–203:17.  Testa did not issue

the theft or sexual harassment complaints against Muoio, nor did he participate in the

investigation of those complaints.  Testa Depo. Tr. 25:16–26:7.  Although at least two of Testa's

alleged comments are age-related, those remarks were temporally distant and were not part of a

pattern or practice of ageist conduct in the bakery department.  Taken together and in context,

15

Testa's comments have little to no probative value with respect to Muoio's age discrimination claims.  The only remaining circumstance that could give rise to an inference of discrimination was LaCerva's alleged comment asking Muoio if he had considered retiring.

LaCerva's comment, made after complaints already had been filed against Muoio, also offers little probative value.  Muoio testified that, after LaCerva notified him that several serious complaints had been filed, Muoio asked LaCerva to "help him out."  Pl.'s Ex. 1, Muoio Depo. Tr. 197:1–197:18.  LaCerva then asked Muoio if he had considered retiring.  *Id.*  That remark is not inherently age-based, and on the record before the court, Muoio has not demonstrated that LaCerva's comment related to Costco's decision-making process when it considered whether to terminate Muoio.

LaCerva played a limited role in Muoio's termination.  LaCerva was charged with conducting a preliminary investigation of Jimenez's complaint, which included interviewing Jimenez and Muoio and submitting both parties' statements and the store's video surveillance footage of the incident to upper management.  Local R. 56(a)1 Statement ¶¶ 71–82.  In making factual findings related to the complaint, LaCerva only validated specific complaints where both parties agreed that a specific action took place or comment had been made, even if Muoio and Jimenez disagreed on the intent underlying those actions.  LaCerva Depo. Tr. 53:25–54:12, 54:17–54:23; *compare* Def.'s Mot. Sum. J., Ex. W *and* Ex. X.  At no point did LaCerva participate in a conversation regarding termination of Muoio's employment, nor did he recommend a specific employment action or penalty to his supervisors.  Even assuming for the sake of argument that LaCerva's question regarding retirement was motivated by age-based discriminatory intent, LaCerva was not sufficiently engaged in Costco's decision making process with respect to Muoio to create an inference that discrimination motivated Muoio's termination.

Muoio alleges that LaCerva issued "findings of fact" that later formed the basis for

Muoio's termination.  Muoio then asks the Court to draw an inference of discrimination under

what is best described as an argument falling within the "cat's paw" theory of employer liability

in employment discrimination cases.  That theory also fails.

      b.  Cat's Paw Theory

An employer may be held liable for employment discrimination "based on the

discriminatory animus of an employee who influenced, but did not make, the ultimate

employment decision." *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1189 (2011).[9]  The cat's paw

theory provides that, "if a supervisor performs an act motivated by [discriminatory] animus that

is intended by the supervisor to cause an adverse employment action, and if that act is a

proximate cause of the ultimate employment action, then the employer is liable" for employment

discrimination. *Staub*, 131 S. Ct. at 1194.  Without expressly adopting or rejecting the cat's paw

theory, the Second Circuit has noted that an employer may be liable if it relies entirely on an

improperly-motivated recommendation from a subordinate who acts out of discriminatory

animus. *Nagle v. Marron*, 663 F.3d 100, 117–18 (2d Cir. 2011).  Other circuits have noted, "an

employer cannot shield itself from liability . . . by using a purportedly independent person or

committee as the decision maker where th[at] decisionmaker merely serves as the conduit,

vehicle, or rubber stamp by which another achieves his or her unlawful design." *Id.* at 117

(citing *Dedmon v. Staley*, 315 F.3d 948, 949 n.2 (8th Cir. 2003)).  Muoio principally argues that

---

9.   Although the Supreme Court evaluated the "cat's paw" theory of liability in the context of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311(c), other circuit and district courts have held that statute analogous to other employment discrimination regimes, including Section 1983 and Title VII, and have applied it to cases brought under those statutes.  *See, e.g.*, *Arendale v. City of Memphis*, 519 F.3d 587, 604 n.13 (6th Cir. 2008); *Campion, Barrow & Assocs., Inc. v. City of Springfield, Ill.*, 559 F.3d 765, 771 (7th Cir. 2009); *Dedmon v. Staley*, 315 F.3d 948, 949 n.2 (8th Cir. 2003); *Rajaravivarma v. Bd. of Ct. State Univ. Sys.*, 862 F. Supp. 2d 127, 149 (D. Conn. 2012); *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 326 n.13, 327 n.14 (E.D.N.Y. 2014); *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 315 n.13 (N.D.N.Y. 2013); *Kregler v. N.Y.C.*, 987 F. Supp. 2d 357, 365–67 (S.D.N.Y. 2013); *Croft v. Vill. of Newark, N.Y.*, slip op., No. 09-cv-6567 (EAW), 2014 WL 3866130, at *10 (W.D.N.Y. Aug. 5, 2014).

when his coworkers made complaints about his conduct, the substance of those complaints was either materially false or misinterpreted.

When evaluating whether the employer's deliberative process was unlawful, a district court examines the employer's motivations. *McPherson v. N.Y.C. Dept. of Educ.*, 457 F.3d 211, 216, 2d Cir. 2006) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).  The accuracy of the conclusions reached through that process, or the truthfulness of allegations against the plaintiff, are immaterial to determining whether the employer was motivated by unlawful, discriminatory animus.  Costco is not required to prove that Muoio sexually harassed Jimenez; it need only show that it reasonably relied on the materials in Muoio's employment file, not his age, when making its decision.  *Graham*, 230 F.3d at 44; *Fisher*, 114 F.3d at 1338.

In *Graham v. Long Island Rail Road*, the defendant adopted a drug and alcohol policy requiring its employees to submit to routine drug testing.  When the plaintiff's first urine test returned a positive for cocaine, the defendant terminated the plaintiff's employment.  *Id.* at 36–37.  The plaintiff underwent a second round of urine testing in which the sample tested by the defendant's laboratory returned a positive for alcohol, and a sample tested by the plaintiff's physician returned a negative result.  *Id.* at 37.  Upon receiving the second positive result, the defendant permanently terminated the plaintiff.  *Id.* The plaintiff alleged that he had been terminated on the basis of his race and that the drug test was pretextual because its results were inaccurate.  The plaintiff offered no evidence indicating that the drug testing policy was informed by any discriminatory or other improper motive, nor did he offer proof that the defendant had reason to believe its laboratory had produced incorrect results but relied on that information, anyway, out of discriminatory animus.  *Id.* at 37, 44.  The Second Circuit held that

the plaintiff had not offered evidence that the defendant acted out of a discriminatory motive, and because he failed to do so, the plaintiff had failed to establish that the test was a pretext. *Id.* at 44.

Muoio does not argue that Jimenez or any of his coworkers had submitted complaints because of discriminatory animus. He argues that LaCerva displayed animus and controlled the universe of information available to Pulver, Portera, and Long in their deliberations. The sole comment attributed to LaCerva—an inquiry into whether Muoio had considered retiring—is insufficient to support an inference that LaCerva had unlawfully discriminatory motives. Further, because LaCerva provided Pulver, Portera, and Long with all materials related to each complaint—such as the parties' written statements and video surveillance footage—those managers had the ability to draw their own conclusions from those submissions. Even assuming LaCerva's comment was motivated by discriminatory intent, Muoio has offered no evidence to demonstrate a connection between LaCerva's alleged animus and Pulver, Portera, or Long's decisionmaking.

Additionally, Muoio has not offered any evidence to suggest that Pulver, Portera, and Long's reliance on the 2012 complaints and his prior disciplinary record was unreasonable. Muoio argues that the 2009 complaints are too remote to the present case to have probative value. At least one of the senior managers during Muoio's 2009 disciplinary proceedings, Pulver, was involved in the 2012 disciplinary proceedings. Muoio's alleged conduct in 2009 was severe; nearly all complaints against Muoio that year were grounds for immediate termination under Costco's Employee Agreement. In 2009, Pulver and Muoio's general manager at the time, Dawson, waived a recommendation from Costco's human resources department recommending a suspension; instead they cautioned Muoio that any future, similar infractions would constitute

grounds for termination.  By 2012, Muoio had been disciplined at least three times for

unbecoming conduct that endangered the safety of his coworkers, for harassment, and for

inappropriate conduct towards women employees.  Muoio Depo. Tr. 154:14–172:7; Def.'s Mot.

Sum. J., Exs. J, K, L, M, U, Z.

Considering the 2012 sexual harassment, theft, and unbecoming conduct complaints in

the context of that disciplinary history, it was reasonable for Costco's upper management to

terminate Muoio.  Muoio has offered no evidence that the Costco managers charged with

reviewing Muoio's complaints were motivated by discriminatory animus.  He offers no evidence

that his local managers engaged in improper conduct, motivated by discriminatory animus, in

order to ensure his termination.  In the absence of such evidence, Muoio cannot demonstrate that,

but for LaCerva's alleged discriminatory animus, Muoio would not have been terminated.  Thus,

his federal and state age-discrimination claims fail.

B.  Disability Discrimination Claims

Muoio alleges two violations of the ADA.  First, he alleges that Costco failed to

reasonably accommodate him with a "light-duty" assignment.  Second, he alleges Costco

terminated him, in part, because of his spinal injury.  For the reasons that follow, Muoio has not

sustained his evidentiary burden on any of his disability-discrimination claims.

1.  *ADA Prima Facie Disability Claim*

To establish a prima facie case of disability discrimination, a complainant must prove (1)

the defendant is subject to the ADA; (2) the plaintiff suffers from a disability within the meaning

of the ADA; (3) the plaintiff was qualified to perform the essential functions of his job, with or

without reasonable accommodation, and (4) he experienced an adverse employment action,

because of (5) this disability or perceived disability.[10]  *Kinneary v. N.Y.C.*, 601 F.3d 151, 155–56

(2d Cir. 2010) (citations omitted); *see also Brady v. Walmart Stores, Inc.*, 531 F.3d 127, 134 (2d

Cir. 2008).  Costco contests the second and fifth prongs of this test—it argues that Muoio is not

disabled within the meaning of the ADA and that his termination was not the result of a real or

perceived disability.

a.  Disability Within the Meaning of the ADA

The ADA defines "disability" as a physical or mental impairment that substantially limits

one or more major life activities, a record of impairment, or being perceived as having such an

impairment.  42 U.S.C. § 12102(1).  The phrase "major life activities" includes, but is not limited

to, lifting.  *Id.* § 12102(2)(A); *see also* 29 C.F.R. § 1630.2(i)–(j) (2012).  An individual's

impairment may qualify as a disability under the ADA if it "substantially limits the ability of an

individual to perform a major life activity as compared to most people in the general population.

An impairment need not prevent or significantly or severely restrict, the individual from

performing a major life activity in order to be considered substantially limiting."[11]  29 C.F.R. §

1630.2(j)(1)(ii).  Under the 2008 amendments to the ADA, a court must conduct an

individualized assessment of whether a person has or is perceived to have a qualifying disability,

---

10.  Connecticut courts look to federal precedent regarding employment discrimination cases brought under the ADA when interpreting similar provisions of the CFEPA.  *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 415 (2008).

11.  The record indicates that Muoio's most significant impairment—the ability to lift more than twenty-five (25) pounds—was a temporary limitation on his ability, not a permanent disability.  The Second Circuit has noted that, "A 'temporary impairment' lasting only a few months is, 'by itself, too short in duration . . . to be substantially limiting.'"  *De La Rosa v. Potter*, 427 F. App'x 28, 29 (2d Cir. 2011) (summary order) (quoting *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316–17 (2d Cir. 1999)).  Although the Second Circuit has refrained from deciding whether a temporary impairment is per se unprotected by the ADA, it has held temporary injuries lasting anywhere from fourteen weeks to seven months to be too short to qualify as a disability within the meaning of the ADA.  *See Adams*, 187 F.3d at 316–17 (fourteen weeks); *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 343 (2d Cir. 1998) (seven months), *superseded by statute on other grounds as recognized in Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85 (2d Cir. 2010) (summary order).

and that assessment must be conducted "without regard to the ameliorative effects of mitigating measures."  *Id.* § 1630.2(j)(1)(vi).

Muoio avers that despite returning to full-duty employment with the ability to lift without restriction, he suffers permanent, residual disability (4% general impairment, 25% impairment to his thoracic spine).  Pl.'s Opp'n Br. 14; Pl.'s Ex. 7.  He does not argue that he has a record of impairment or is perceived as disabled.  Although Muoio has experienced an ongoing impairment in his abilities, he has not offered evidence contextualizing his impairment.  Further, Muoio's medical records allowed him to return to work without restriction.  That lack of restriction indicates that, by the time he returned to full-duty employment, Muoio no longer suffered from an impairment that substantially limited one or more major life activities.  In the absence of evidence demonstrating that he is unable to perform a major life activity as compared to most people in the general population, Muoio has not demonstrated that he falls within the ADA's definition of a disabled person.

Even if Muoio were disabled within the meaning of the ADA, he has not offered evidence indicating that his coworkers were aware that he suffered permanent, residual effects from his injury, nor has he offered evidence that discriminatory animus motivated his termination.  In the absence of evidence indicating discriminatory animus or intent, Muoio's prima facie disability discrimination claim fails.

   2.   *Failure to Accommodate a Temporary Disability Claim*

Muoio additionally argues that Costco failed to accommodate him after his injury, in violation of the ADA.  To establish a failure to accommodate claim under the ADA, the plaintiff must "produce enough evidence for a reasonable jury to find" that he is (1) disabled within the meaning of the statute, (2) able to perform the essential functions of the job with or without a

reasonable accommodation, and (3) the defendant, despite knowing of the disability, did not reasonably accommodate it. *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 405–06, 415 (2008).

At no point did Muoio suffer an injury related to a failure to accommodate his lifting restriction.  Muoio's physician declared him totally disabled from December 20, 2011 to February 6, 2012. Local R. 56(a)1 Statement ¶ 11; Pl's Opp'n to Mot. Sum. J., Ex. 12; Def.'s Mot. Sum. J., Ex. O.  On January 16, 2012, Muoio's physician instructed that Muoio could return to work beginning February 6, 2012 with a lifting restriction of fifteen (15) pounds and a maximum shift time of four hours per day. Muoio Depo. Tr. 133:20–134:8; Pl.'s Opp'n to Mot. Sum. J., Ex. 16; Def.'s Mot. Sum. J., Ex. P.  Muoio reported the results of his doctor's orders to LaCerva.  Although the parties disagree on the content of the conversation that took place on January 16, Muoio returned to his physician sometime before February 6 and received clearance to increase his lift capacity to twenty-five (25) pounds.  Muoio returned to work on the first day he was able—February 6—with clearance to lift twenty-five pounds and to work no more than four hours per day.  Pl's Opp'n to Mot. Sum. J., Ex. 13; Def.'s Mot. Sum. J., Ex. Q.

Muoio argues that LaCerva's alleged failure to accommodate his injury was a form of disability discrimination that caused him harm.  Muoio has failed to offer any evidence substantiating that allegation; he did not miss days of work once he received medical clearance, nor was he assigned to an inferior position.  Instead, LaCerva accommodated Muoio by allowing him to remain in his pre-injury position with the restrictions required by his physician.  Muoio Depo. Tr. 149:24–150:5; Local R. 56(a)1 Statement ¶ 70.  Muoio has not offered evidence showing that LaCerva/Costco took an adverse employment action against him, nor does he offer evidence giving rise to an inference of unlawful discrimination.  Accordingly, Muoio's failure to

accommodate claim fails.

       3.    *CFEPA Disability Claims*

In the event that he fails to demonstrate an ADA-qualifying disability, Muoio argues he falls within the CFEPA's definition of disability and should be granted relief on his claim that Costco failed to properly accommodate his injury.  He does not raise a prima facie discrimination claim under the CFEPA.

The CFEPA employs a more generous definition of disability, and it defines a physical disability to include "any chronic physical handicap, infirmity or impairment."  Conn. Gen. Stat. § 46a-51(15); *Beason v. United Techs. Corp.*, 337 F.3d 271, 276–77 (2d Cir. 2003).  Connecticut courts determine whether an individual's injuries are "chronic" at the time an employer makes an adverse employment decision.  *Caruso v. Siemens Bus. Comm'ns Sys., Inc.*, 392 F.3d 66 (2d Cir. 2004).

Even assuming Muoio is disabled within the meaning of the CFEPA, Costco never took adverse action against Muoio with respect to his accommodation claim.  Instead, it accommodated him fully, and he returned to work on the first day he was medically-cleared to do so.  Without evidence of an adverse employment action with respect to his accommodation claim, Muoio has not met his evidentiary burden under the CFEPA.

  C.  <u>Retaliation for Exercising Rights Under Connecticut's Workers' Compensation Act</u>

Muoio alleges that he was terminated because he chose to file a workers' compensation claim in December 2011.  Connecticut General Statutes section 31-290a provides that, "No employer who is subject to the provisions of the [Workers' Compensation Act] shall discharge . . . any employee because the employee has filed a claim . . . or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."  The statute also provides a private

right of action for an employee alleging discharge or discrimination for exercising rights

provided under Connecticut's Workers' Compensation Act, including petitioning for

reinstatement, back wages, re-establishment of employee benefits, and punitive damages.  *Id.* at

§ 31-290a(b).  The aggrieved employee may elect to file a civil action *or* file a complaint with

the chairman of the Workers' Compensation Commission.  *Id.*  There is no duty to exhaust

administrative remedies before the Workers' Compensation Commission prior to bringing suit.

      To state a prima facie claim for termination (discharge) in retaliation for filing a workers'

compensation claim, the complainant must establish (1) that he has filed a claim for workers'

compensation benefits or otherwise exercised his rights under the statute, (2) there was an

adverse employment action taken against him, and (3) there was a causal connection between the

protected activity and the adverse employment action.  *Dupee v. Klaff's, Inc.*, 462 F. Supp. 2d

233, 240 (D. Conn. 2006) (citing *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir.

2002)).  A claim for workers' compensation retaliation is subject to the same burdens of proof as

federal employment discrimination law.  *Ford v. Blue Cross & Blue Shield of Conn., Inc.*, 216

Conn. 40, 53 (1990).   In order to prevail on summary judgment, the plaintiff is subject to the

*McDonnell Douglas* burden-shifting regime, and he must prove his prima facie case by a

preponderance of the evidence.  *MacDermid, Inc. v. Leonetti*, 310 Conn. 616, 632 n.9 (2013);

*Mele v. City of Hartford*, 270 Conn. 751, 767–69 (2004).  In doing so, the plaintiff must present

evidence that gives rise to an inference of unlawful discrimination.  *Callendar v. Reflexite Corp.*,

143 Conn. App. 351, 363, *cert. denied*, 310 Conn. 905 (2013).

      The parties agree that Muoio filed a workers' compensation claim, and that he was

subject to an adverse employment action.  A party may establish the necessary connection

between those events "*indirectly* by showing that the protected activity was followed closely by

discriminatory treatment, or through evidence such as disparate treatment. . . or *directly* through evidence of retaliatory animus." *Hammond v. Bridgeport*, 139 Conn. App. 687, 696 (2012), *cert. denied*, 308 Conn. 916 (2013) (internal marks omitted; emphasis in original). "Without some proof of an improper motive," the plaintiff's case must fail. *Id.* Muoio relies on two arguments for establishing a causal connection: the first is the amount of time between his injury occurred and when an incident report was filed, and the second is the temporal proximity of his application for workers' compensation benefits to his termination. Pl.'s Opp'n Br. 22–23.

I could not find any cases holding that a delay in submitting an injury report for workers' compensation was sufficient to give rise to an inference of discrimination. Muoio reported his injury to his supervisor, Browning, on the day it occurred and made a report to that effect. Muoio Depo. Tr. 96:7–96:22. Muoio reported his injury to Testa on the next day that Muoio and Testa were working, and Testa filed an injury report by December 16, 2011. *Id.* 96:20–101:4, 116:17–119:2; Def.'s Mot. Sum. J., Ex. N. Within approximately three weeks of his early-December injury, Muoio submitted his claim for workers' compensation. Pl.'s Opp'n Br., Ex. 19. There is no evidence that Testa or Costco sought to interfere with Muoio's ability to file his claim. Further, there is no evidence that Costco interfered with Muoio's ability to obtain benefits under the workers' compensation program.

Federal and state courts in Connecticut have found that it is possible for a reasonable jury to find a causal connection between the date when an employee exercises his rights under the workers' compensation program and when he is terminated if the period of time between the two events is sufficiently close. *See Callendar*, 143 Conn. App. at 372–73; *Dupee*, 462 F. Supp. 2d at 240–41. In this case, ten months passed between when Muoio filed his claim (December

2011) and when he was terminated (September 2012).  Muoio offers no other evidence to support his assertion that Costco terminated him for exercising his workers' compensation rights.

Muoio's allegation is inconsistent with the record evidence, and he has not met his evidentiary burden with respect to the causation element of his claim.  When Muoio returned to full-duty employment, his store managers asked him to serve as a temporary supervisor while the bakery's primary supervisor, Karna Browning, was on medical leave.[12]  Muoio Depo. Tr. 24:15–25:6.  Muoio served in that capacity twice before declining another temporary appointment, telling LaCerva and Testa that if they wanted him to continue to cover the position, they should promote him.  *Id.* 25:7–27:19.  Entrusting Muoio with supervisory responsibility is wholly inconsistent with the claim that Costco sought to terminate him in retaliation for his workers' compensation application.  The record indicates that Costco subjected Muoio to adverse employment actions only after serious allegations of misconduct were made against him.

Courts have found it reasonable for an employer to terminate an employee based on a legitimate, non-pretextual rationale.  *White v. Conn. Dept. of Children & Families*, 544 F. Supp. 2d 112, 119 (D. Conn. 2008) (citing *Erisoty v. Merrow Mach. Co.*, 34 Conn. App. 708, 713, *cert. denied*, 231 Conn. 908 (1994)), *aff'd*, 330 F. App'x 7 (2009) (summary order); *Kopacz v. Day Kimball Hosp. of Windham Cnty.*, 64 Conn. App. 263, 269–70 (2001) ("§ 31-290a . . . does not require an employer to retain an employee unable to perform his or her work simply because that inability resulted from work related injury or illness.").  Under the *McDonnell Douglas* balancing test, once Costco identifies a legitimate rationale for terminating Muoio, the burden

---

12. Muoio tries to argue that Browning, who is nearly twenty (20) years younger than him, replaced him and that that replacement gives rise to an inference of discrimination.  That characterization of events is not validated by the record; at all relevant times from December 2011 to September 2012, Browning was the bakery supervisor.  When she took medical leave, Muoio temporarily filled her position, but that appointment was not a promotion or a permanent change.  When Browning returned from leave, she returned to her original position.  She did not "replace" Muoio.

shifts to Muoio to demonstrate that that rationale is pretextual, because an employer may terminate an employee for any legitimate, non-discriminatory reason. *Calendar*, 143 Conn. App. 355–57; *cf. Diaz v. Housing Auth. of City of Stamford*, 258 Conn. 724, 731 (2001).

Muoio does not allege that his coworkers filed their complaints in retaliation for Muoio submitting a workers' compensation claim, nor does he allege that Costco solicited complaints against him in order to paper his file and terminate him for exercising his workers' compensation rights. He relies only on temporal proximity to make his claim and has not offered evidence that tends to rebut Costco's assertion that it terminated Muoio for cause. *Mele*, 270 Conn. at 768. Connecticut state courts have held that

> an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was uncontroverted independent evidence that no discrimination had occurred.

*Calendar*, 143 Conn. App. at 376 n.8. Muoio has offered no evidence to rebut Costco's assertion that it terminated him for cause. Instead, Muoio noted that his coworkers had "personal problems," including interpersonal problems with working with him, but he did not allege that those problems were related to his application for workers' compensation. Costco has provided copious evidence to substantiate its claim; Muoio has offered only his statement that he believed he had been "blackballed."

Muoio has not met his evidentiary burden on the matter of causation. The record does not support his claim for unlawful termination in retaliation for exercising rights under Connecticut's Workers' Compensation Act.

**IV.   Conclusion**

Because Muoio has either conceded that summary judgment should enter or has failed to meet his evidentiary burden on each of the counts of his amended complaint, Costco's motion for summary judgment is GRANTED.  The Clerk shall enter judgment for Costco and close this case.


It is so ordered.

Dated at Bridgeport, Connecticut, this 14th day of January 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge